# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.H., a minor, by his guardian ad litem A.H., et al.,<br><br>                            Plaintiff(s),<br>   vs.<br><br>NOBEL LEARNING COMMUNITIES, INC.., et al.,<br><br>                            Defendant(s). | CASE NO. 15cv460-LAB (KSC)<br><br>**ORDER DENYING *EX PARTE* APPLICATION FOR HEARING; AND**<br><br>**ORDER TO SHOW CAUSE RE: REMAND** |

After Plaintiffs filed suit in state court, Defendant removed it, citing both diversity jurisdiction and federal question jurisdiction. Among the pleadings is a request for a temporary restraining order (TRO) and preliminary injunction. After removal, Plaintiffs filed an *ex parte* motion to expedite, urging the Court to immediately hold a hearing on the TRO application.

**Preliminary Injunctive Relief**

The motion for a TRO and preliminary injunction is included in the notice of removal as Exhibit B. The underlying claim arises from the disenrollment of the child D.H. from school on or just before January 16, 2015. Plaintiffs argue that the school violated its contract with them, as well as state law and possibly federal law. The TRO motion is pled based on state standards, rather than federal standards.

Under federal law, a plaintiff can obtain a TRO under either the four-factor test elucidated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), or the sliding-scale approach under which a lesser showing of likelihood of success on the merits can be balanced by a stronger showing of substantial harm in the absence of relief. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In addition, the issuance of a TRO is governed by Fed. R. Civ. P. 65, which among other things requires imposition of a bond or security. Rule 65(c).

Reviewing the TRO motion under the federal standard, there is no likelihood that a few days' delay will result in irreparable harm. D. H. has not been attending the school in question since mid-January, but instead has been attending a different school, and there has been no showing that allowing Defendants a few days to respond to the motion will cause irreparable harm. In other words, there does not appear to be any emergency here that requires immediate action by the Court without giving Defendants a reasonable time to respond.

Although the motion emphasizes the importance of preserving the status quo, it actually seeks to change the status quo by ordering the school to take D. H. *back*. Mandatory injunctions, *i.e.*, those that order a party to take action (as opposed to prohibitory injunctions that merely forbid a party to take action, in order to preserve the status quo), are particularly disfavored. *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011); *Marlyn Neutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). Mandatory injunctions "are not granted unless extreme or very serious damage will result." *Park Village* at 1160.

Also problematic is that, while the motion itself pleads specific facts, the complaint has been heavily redacted, apparently to remove certain personal and medical details about the minor child (even though neither he nor his parents are identified by name in this action). The result is that it is difficult to determine the likelihood that Plaintiffs will succeed on the merits. No unredacted copies have been lodged with the Court.

/ / /

Because the TRO motion does not meet federal standards for issuance of a TRO, the TRO is **DENIED**.

Plaintiffs may still be able to show they are entitled to a preliminary injunction. They may, if they wish, renew their motion and seek a preliminary injunction on an *ex parte* basis. If they do, they are reminded that whether and when to hold a hearing on a motion for preliminary injunctive relief, and how much time Defendants will have to respond, are disputed issues, and as such Plaintiffs' counsel should not initiate *ex parte* communications to chambers to urge prompt action. *See* Standing Order, ¶ 14. (This Court recognizes its obligation to diligently decide issues without reminders from counsel.) Furthermore, the notice of removal is gargantuan — 250 pages long — and their *ex parte* application was filed only one day before they called to ask the Court to schedule a hearing. *See* Standing Order, ¶ 8 (giving parties opposing *ex parte* applications two days to file their opposition).

**Removability and Jurisdiction**

When there is any doubt regarding jurisdiction, the Court is required to raise the issue, *sua sponte* if necessary. *See United Investors Life Ins. v. Waddell & Reed Inc.*, 360 F.3d 960, 966–67 (9th Cir.1994). *See also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1118 (9th Cir. 2004) (holding that if it was doubtful that jurisdiction had been established, district court should remand). Although the notice of removal identifies two bases for the Court's exercise of jurisdiction, both are shaky.

With regard to diversity jurisdiction, the notice of removal's calculation of the amount in controversy is questionable. It mentions recovery for costs of enrolling D. H. in a different school as being nearly $9,000 (that is, $9,000 more than it would have cost to keep him enrolled at Nobel Learning). (Notice of Removal, ¶ 19(a).) It mentions restitution in the amount of nearly $11,000 (*Id.*, ¶ 20.) No other dollar figures are provided, so the notice attempts to estimate them. It estimates the amount of damages recoverable for his emotional distress claim, by citing *Zwick v. Regents of the University of Michigan*, 2008 July Verdicts LEXIS 30994 (E.D. Mich., Dec. 2, 2008), a case dealing with the expulsion of a dental student diagnosed with ADHD. That case clearly does not present analogous facts,

because D. H. is in the eighth grade, and not enrolled in a postgraduate professional school. The notice of removal attempts to estimate punitive damages by citing two cases against Allstate Insurance and R&H Oil and Gas Co., and noting that punitive damages against such large corporations were likely to exceed $75,000. (Notice of Removal, ¶ 22.)  There is no showing of Defendants' net worth in comparison to Allstate's or R&H Oil and Gas's, nor that the cases were analogous such that a punitive damages award of similar size was likely.

The Notice of Removal also estimates attorney's fees, provided by statute, as likely to exceed $75,000 if the case goes to trial. (Notice of Removal, ¶ 23.) But the amount in controversy is determined at the time of removal. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003).  Although the Ninth Circuit has yet to decide the issue, the dominant view among district courts is that attorney's fees incurred after the date of removal are not to be included in the amount in controversy. *See Robinson v. American Airlines, Inc.*, 2015 WL 735661 at *4 (C.D.Cal., Feb. 20, 2015). This is particularly true in view of the strong presumption against removal, and the Ninth Circuit's directive that doubts are to be resolved in favor of remand. *See Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

Because the amount in controversy is not evident from the face of the complaint it is up to the Defendant, as the removing party, to prove the amount in controversy by a preponderance of evidence. *See Matheson*, 319 F.3d at 1090–91 (explaining standard and evidence to be used to prove amount in controversy).

With regard to federal question jurisdiction, all of D. H.'s claims arise under state law, not federal law. The notice of removal argues that because the Americans with Disabilities Act (ADA) is part of the complaint, a federal question is presented. The notice points out that Defendants entered into a settlement agreement with the Department of Justice to ensure that they complied with the ADA. (Compl., ¶¶ 42–42.) The notice argues that because the complaint alleges they acted in violation of this agreement, the claim is federal. But the settlement agreement is not federal law, even if it was entered into for purpose of settling a federal dispute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994). *Compare Morris v. City of Hobart*, 39 F.3d 1105, 1111–1112 (10th Cir. 1994) (holding

that federal courts lacked jurisdiction over agreements entered into to settle Title VII claims, as opposed to claims brought under Title VII). Furthermore, while the complaint references the agreement, Plaintiffs are not attempting to enforce it as if they were a party to it.

The only claim that may require the resolution of a federal question is Plaintiffs' sixth claim, brought under California's Unfair Business Practices Act, Cal. Bus. & Prof. Code, §§ 17200, *et seq.* But it does not rely solely on violations of the ADA and other federal law; it also alleges violations of the settlement agreement and of Cal. Civil Code § 54.1. (*See* Compl., ¶¶ 107–108.) It also alleges acts it identifies as generally unfair, without referencing a particular law. *See Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4h 163, 180 (1999) (holding that a plaintiff need not show violation of a separate law to establish liability under § 17200).

In *Nevada v. Bank of America Corporation*, 672 F.3d 661 (9th Cir. 2012), the Ninth Circuit considered whether a claim brought under a similar statute, alleging violation of both federal and state law, gave rise to federal question jurisdiction. The court held that although the statute "borrowed" federal law, federal question jurisdiction did not attach. *Id.* at 675. In part, this was because the federal law was not a necessary element of the claim. *Id.* (*citing Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)). There, as here, the gravamen of the plaintiff's claim was that the defendant violated a state statute by various acts, some of which also violated federal law. *Id.*

Because it appears this Court may lack jurisdiction over the removed action, Defendants are **ORDERED TO SHOW CAUSE** why this case should not be remanded. They may do so by filing and serving a memorandum of points and authorities, not to exceed ten pages (not counting any appended or lodged materials), by **Thursday, March 12, 2015.** Plaintiffs may, if they wish, file a response subject to the same page limits by **Thursday, March 19, 2015.** If Defendants agree that this Court lacks jurisdiction, or if they do not think they can establish jurisdiction, they should promptly file a notice stating that they do not oppose remand.

The burden falls on Defendants to establish jurisdiction. *See Gaus*, 980 F.2d at 566. If they do not do so within the time permitted, this action will be remanded.

**IT IS SO ORDERED**.

DATED: March 5, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge